UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RAMDEO CHANKAR SINGH,

                Plaintiff,

       — against —

MARY ANN GANTNER, District Director,
U.S. CITIZENSHIP & IMMIGRATION
SERVICES,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM and ORDER**

06 CV 607 (SLT)(SMG)

**TOWNES, United States District Judge**[1]:

    Plaintiff, Ramdeo Chankar Singh ("Singh"), brings this action, pursuant to 8 U.S.C. § 1421(c), against the District Director of United States Citizenship and Immigration Services ("CIS"), seeking de novo review of CIS's denial of his naturalization application. CIS now moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted, and Singh's application for naturalization is denied.

## BACKGROUND

    Singh was born on March 23, 1966, in Trinidad and Tobago. (Compl. ¶ 4.) On his fifteenth birthday, he entered the United States from Canada. (*Id.*) Although Singh admits that he is an undocumented alien, he nonetheless has an extensive history in the United States Armed Forces. (Memorandum of Law in Support of Motion to Dismiss, at 1.) He enlisted in the United States Army on September 29, 1993, and served until March 30, 1994. (Compl. ¶ 4.) Thereafter, Singh served in the United States Army Reserves from April 7, 1994, to January 13,

---

[1]The Court wishes to acknowledge the capable assistance of a student intern, Renee Morisa Williams of Fordham Law School, in the preparation of this Memorandum and Order.

1998.  (*Id.*)  After he served in the Army Reserves, Singh re-enlisted in the Army on January 29, 1998, and was on active duty until March 2001, when he was honorably discharged.  (*Id.*)  During this period, Singh was stationed in Kosovo and served as a licensed practical nurse with the rank of sergeant.  (Compl. ¶ 6.)

On February 3, 2003, Singh filed a naturalization application, under Section 329 of the Immigration and Nationality Act ("INA § 329"), 8 U.S.C. § 1440(a), and Executive Order 13,119.  INA § 329(a) provides that:

> [a]ny person who, while an alien or a noncitizen national of the United States, has served honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States . . . during any . . . period which the President by Executive order shall designate as a period in which Armed Forces of the United States are or were engaged in military operations involving armed conflict with a hostile foreign force, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment, reenlistment, extension of enlistment, or induction such person shall have been in the United States, the Canal Zone, American Samoa, or Swains Island, or on board a public vessel owned or operated by the United States for noncommercial service, whether or not he has been lawfully admitted to the United States for permanent residence . . . .

In seeking naturalization, Singh asserted that Executive Order 13,119, 64 Fed. Reg. 18,797 (Apr. 13, 1999), is the sort of Executive order that Congress envisioned under INA § 329.  Executive Order 13,119, which is entitled "Designation of Federal Republic of Yugoslavia (Serbia/Montenegro), Albania, the Airspace Above, and Adjacent Waters as a Combat Zone" provides:

2

> Pursuant to the authority vested in me as President by the
> Constitution and laws of the United States of America, including
> section 112 of the Internal Revenue Code of 1986 (26 U.S.C. 112),
> I designate, for the purposes of that section, the following
> locations, including the airspace above such locations, as an area in
> which Armed Forces of the United States are and have been
> engaged in combat:
>
> -- The Federal Republic of Yugoslavia (Serbia/Montenegro)
> -- Albania
> -- the Adriatic Sea;
> -- the Ionian Sea north of the 39th parallel.
>
> For the purposes of this order, I designate March 24, 1999, as the
> date of the commencement of combatant activities in such zone.

Singh received a hearing and appeared before CIS on September 17, 2004. (Compl. ¶ 7.) Although his naturalization application was initially recommended for approval, CIS denied Singh's naturalization application on December 1, 2004. (Compl. ¶ 7.) In its Decision on Application for Naturalization, CIS determined that Singh "[did] not meet the requirements under INA § 329" and that "Executive Order 13,119 never specifically designated the Kosovo Conflict for purposes of Section 329 of the INA, as previous orders did." (Compl. ¶ 7.) CIS stated that:

> [t]he last [Executive order relating to INA § 329] was Executive
> order 13269, signed by President Bush, [which] states that anyone
> serving in the military or receiving honorable discharge on or after
> 9/11/01, will be granted U.S. citizenship. Section 329 states "the
> President by Executive order shall designate as a period in which
> Armed Forces of the United States are or were engaged in military
> operations involving armed conflict with a hostile foreign force, . .
> . ." The United States involvement with Kosovo does not meet the
> above definition. And according to your administrative file, you
> have not re-enlisted nor were you serving in the military on or after
> 9/11/2001 or the previously designated Executive order for Desert
> Storm 8/21/1990 to 4/11/1991. Unfortunately, all your military
> service falls between the last two (2) designated conflicts under
> Section 329. (Compl., Ex. D, p. 2.)

3

Singh appealed, but on April 15, 2005, CIS upheld its decision in its Decision on Review of Denial of Naturalization Application. CIS stated that, "after careful review of the record and all relevant statutes, the decision to deny the application for naturalization must remain unchanged." (Compl., Ex. G, p. 1.)

Singh then commenced this action pursuant to 8 U.S.C. § 1421(c)[2], seeking de novo review of his naturalization application. In his complaint, Singh alleges that Executive Order 13,119, entitles him to naturalization because it designates the time period he served in Kosovo as one where the Armed Forces are or were engaged in military operations involving armed conflict with a hostile foreign force. (Compl. ¶¶ 8-10.) In particular, Singh relies on President Clinton's use of the word "including," alleging that this word indicates that President Clinton designated Executive Order 13,119 for various purposes, including naturalization of alien service members pursuant to INA § 329. (Compl. ¶ 11.)

CIS now moves pursuant to Fed. R. Civ. P 12(b)(6) to dismiss this complaint. CIS argues that Singh fails to state a claim because Executive Order 13,119 only designates combat zones for purposes of section 112 of the Internal Revenue Code of 1986. In addition, CIS asserts that, even assuming Executive Order 13,119 could be construed in the manner Singh urges, the Executive Order would be invalid because it fails to provide for naturalization of all alien service members during designated time periods. Thus, the only issue upon the motion is whether Executive Order 13,119 is the sort of Executive Order envisioned under INA § 329.

---

[2]Under 8 U.S.C. § 1421(c), a person whose application for naturalization is denied may seek review of such denial before a United States district court. Because review of denial of an application for naturalization is de novo, the district "court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).

## DISCUSSION

### A. *Standard of Review*

A court may dismiss a complaint, pursuant to Fed. R. Civ. P 12(b)(6), if it fails to state a claim upon which relief may be granted. *See Gmurzynska v. Hutton*, 355 F.3d 206, 209 (2d Cir. 2004). The court should not dismiss the complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Tand v. Solomon Schechter Day Sch.*, 324 F. Supp. 2d 379, 382 (E.D.N.Y. 2004) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985)). In deciding the motion, the court may consider only the facts alleged in the pleadings, matters of which judicial notice may be taken, and those documents attached as exhibits or incorporated by reference in the pleadings. *See Tand*, 324 F. Supp. 2d at 382. The court must also accept the allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff. *See Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000).

"[T]he power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *INS v. Pangilinan*, 486 U.S. 875, 883-84 (1988). An applicant for naturalization bears the burden of proving that he or she satisfies all the statutory requirements for citizenship. *See id.* at 886 (quoting *Berenyi v. District Director, INS*, 385 U.S. 630, 637 (1967)). In stark contrast to deportation proceedings, in which the "rule of lenity" dictates that ambiguities in deportation statutes be construed in favor of aliens, courts in naturalization proceedings "generally construe ambiguities to the benefit of the government." *Puello v. Bureau of Citizenship and Immigration Servs.*, 418 F. Supp. 2d 436, 438 (S.D.N.Y. 2005). Thus, any

5

doubts concerning an applicant's statutory eligibility for naturalization should be resolved in favor of the United States and against the applicant. *See Ashton v. Gonzales*, 431 F.3d 95, 99 (2d Cir. 2005) (citing *United States v. Manzi*, 276 U.S. 463, 467 (1928)).

### B. *Interpretation of INA § 329 and Executive Order 13,119*

INA § 329 rewards noncitizens who "honorably served in the armed forces of the United States during certain wartime hostilities by relaxing preconditions for their naturalization." *Santamaria-Ames v. INS*, 104 F.3d 1127, 1128 (9th Cir. 1996). However, INA § 329 is "not simply a matter of reward; it is also a recognition that no further demonstration of attachment to this country and its ideals is necessary." *United States v. Convento*, 336 F.2d 954, 955 (D.C. Cir. 1964). In construing this statute, this Court "must be receptive" to its purpose, but is not permitted to extend "the generosity of the legislation past the limits to which Congress was willing to go." *Tak Shan Fong v. United States*, 359 U.S. 102, 107 (1959).

In the construction and interpretation of a statute or an Executive Order, accepted canons of statutory construction must be applied. "As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text." *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005) (citing *United States v. Hassanzadeh*, 271 F.3d 574, 580 (4th Cir. 2001)). Moreover, "[t]he text must be construed consistently with the [Executive] Order's 'object and policy.'" *Id.* (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996)). "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette*, 452 U.S. 576, 580 (1981) (quoting *Consumer Product Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

The plain language of Executive Order 13,119 expresses or states that its sole purpose is to designate certain locations "combat zones" so that soldiers deployed in those locations can enjoy tax benefits available under Internal Revenue Code § 112, 26 U.S.C. § 112 ("IRC § 112"). IRC § 112 was enacted to provide tax benefits to members of the Armed Forces by excluding "compensation for active service in a combat zone from taxable gross income." *Waterman v. Commissioner*, 179 F.3d 123, 125 (4th Cir. 1999). The provision states that:

> [s]ervice is performed in a combat zone only if performed on or after the date designated by the President by Executive Order as the date of the commencing of combatant activities in such zone, and on or before the date designated by the President by Executive Order as the date of the termination of combatant activities in such zone . . . .

IRC § 112(c)(3).

IRC § 112 is the only statute mentioned in Executive Order 13,119. For the purposes of IRC § 112, the Executive Order expressly designates as combat zones, the Federal Republic of Yugoslavia (Serbia/Montenegro), Albania, the Adriatic Sea and the Ionian Sea north of the 39th parallel, and it designates March 24, 1999, as the date that combatant activities commenced in such zones. Moreover, the language of Executive Order 13,119 closely tracks the language of IRC § 112, referring to "zone[s]" in which the "Armed Forces of the United States" were engaged in "combatant activities." These facts compel the conclusion that Executive Order 13,119 was intended to provide tax benefits to soldiers serving in the designated geographical locations during the designated time periods.

Even though Executive Order 13,119 does not mention INA § 329, Singh urges this Court to read the word "including," in the second line of Executive Order 13,119 ("[p]ursuant to

7

the authority vested in me as President by the Constitution and laws of the United States of America, including section 112 of the Internal Revenue Code of 1986 (26 U.S.C. 112) . . . "), as indicating that President Clinton designated the Kosovo conflict for various reasons, including that of INA § 329. However, there is nothing to substantiate Singh's speculation that Executive Order 13,119 has anything to do with INA § 329. While Executive Order 13,119 gives a date on which "combatant activities" commenced in designated combat zones, it does not purport to designate "a period in which Armed Forces of the United States . . . were engaged in military operations involving armed conflict with a hostile foreign force." In contrast to Executive Order 13,119, prior Executive Orders pertaining to INA § 329 have not only specifically referred to that section, but have expressly designated such periods. For example, in Executive Order 12,939, President Clinton stated:

> By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 1440 of title 8, United States Code, and in order to provide expedited naturalization for aliens and noncitizen nationals who served in an active-duty status in the Armed Forces of the United States during the period of the Persian Gulf Conflict, it is hereby ordered as follows: For the purpose of determining qualification for the exception from the usual requirements for naturalization, *the period of Persian Gulf Conflict military operations in which the Armed Forces of the United States were engaged in armed conflict with a hostile force commenced on August 2, 1990, and terminated on April 11, 1991.*

Exec. Order No. 12,939, 59 Fed. Reg. 61231 (Nov. 22, 1994) (emphasis added). Similarly, in Executive Order 13,269, President George W. Bush stated:

> By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 329 of the Immigration and Nationality Act (8 U.S.C. 1440) (the "Act"), and solely in order to provide expedited naturalization for aliens

8

> and noncitizen nationals serving in an active-duty status in the
> Armed Forces of the United States during the period of the war
> against terrorists of global reach, it is hereby ordered as follows:
> For the purpose of determining qualification for the exception from
> the usual requirements for naturalization, *I designate as a period in
> which the Armed Forces of the United States were engaged in
> armed conflict with a hostile foreign force the period beginning on
> September 11, 2001.*

[Exec. Order No. 13,269, 67 Fed. Reg. 45287 (Jan. 3, 2002) (emphasis added)].

Even assuming, *arguendo*, that President Clinton intended to designate the period commencing on March 24, 1999, as "a period in which Armed Forces of the United States . . . were engaged in military operations involving armed conflict with a hostile foreign force," Executive Order 13,119 would likely be invalid because it limits the authorization for naturalization to individuals who served in specific geographical locations. In *In re Reyes*, 910 F.2d 611, 613 (9th Cir. 1990), the Ninth Circuit held that Executive Order 12,582, which attempted to authorize naturalization of only some of the servicemen and women serving during a specified period of time, was invalid. Executive Order 12,582 limited eligibility for naturalization to active duty personnel who served honorably in the Grenada campaign. The *Reyes* Court examined the legislative history of INA § 329, and determined that Congress had deliberately decided to authorize the President "to designate only time periods – and not geographical areas." *Id.* The Court found that Congress had chosen to emphasize "the period of time . . . *because of the ever-present possibility of reassignment to the war zones of operation.*" *Id.* (quoting S.Rep. No. 1292, 90th Cong., 2d Sess. 13, reprinted in 1968 U.S.C.C.A.N. 4517, 4527 (emphasis in *Reyes*)). The Court held that Executive Order 12,582 had no severability clause, and since it was apparent from the language of the Executive Order that the President

9

would not have signed it had he known that it would encompass aliens in geographical locations unrelated to the Grenada invasion, the entire Executive Order was invalid.

Executive Order 13,119 resembles Executive Order 12,582 in several respects. First, like Executive Order 12,582, Executive Order 13,119 designates specific geographical areas. Moreover, Executive Order 13,119 does not contain a severability clause and contains language which suggests an intention to reward only the military personnel serving in a specific geographical area. Therefore, even if this Court were to find that President Clinton intended Executive Order 13,119 to confer immigration benefits on some service members, that Executive Order would not suffice to do so.

## CONCLUSION

For the reasons set forth above, this Court concludes that Singh is not eligible for naturalization. As much as this Court might like to reward Singh for his years of distinguished service to this country, this Court cannot extend the scope of INA § 329 and Executive Order 13,119 beyond the limits set by Congress and the President. *See Tak Shan Fong*, 359 U.S. at 107. Accordingly, Singh's application for naturalization is denied, and this action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
August 15, 2007

*Sandra L. Townes*

SANDRA L. TOWNES
United States District Judge